# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re<br><br>BIOLITEC, INC.,<br><br>                        Debtor. | Case No. 13-11157 (DHS)<br><br>Hon. Donald H. Steckroth<br><br>Chapter 11 |
| MELANIE CYGANOWSKI, CHAPTER 11 TRUSTEE FOR BIOLITEC, INC. AND ANGIODYNAMICS, INC.<br><br>v.<br><br>BIOLITEC U.S. INC.; BIOLITEC AG; BIOLITEC MEDICAL DEVICES, INC.; BIOMED TECHNOLOGY HOLDINGS LTD.; CERAMOPTEC INDUSTRIES, INC.; BIOLITEC HOLDING US, INC.; BIOLITEC FZ LLC; WOLFGANG NEUBERGER; JACK FURCHT; SCOTT COTE; CEMAL SAGNAK; DAMIAN PLANGE; JOHN DOE AND JANE DOE. | Adv. Pro. No.: 13-1883 (DHS) |

---

## BRIEF IN SUPPORT OF PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTIVE RELIEF

---

<table>
<tr><td>

McDONNELL CROWLEY, LLC
115 Maple Avenue
Red Bank, New Jersey 07701
(732) 383-7233
Brian T. Crowley, Esq. (BC 2778)

and

OTTERBOURG, STEINDLER, HOUSTON & ROSEN, P.C.
230 Park Avenue
New York, New York 10169-0075
(212) 661-9100
David M. Posner, Esq. (*pro hoc vice*)

*Counsel for Melanie L. Cyganowski*
*Chapter 11 Trustee*

</td><td>

WEBBER McGILL, LLC
760 Route 10, Suite 104
Whippany, New Jersey 07981
(973) 739-9559
Douglas J. McGill, Esq. (DM 0436)

and

BOND SCHOENECK & KING, PLLC
One Lincoln Center
Syracuse, New York 13202
(315) 218-8000
Joseph Zagraniczny, Esq. (*pro hoc vice*)
Stephen A. Donato, Esq. (*pro hoc vice*)
Sara C. Temes, Esq. (*pro hoc vice*)

*Counsel for AngioDynamics, Inc.*

</td></tr>
</table>

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ...................................................................................... 6

LEGAL ARGUMENT .......................................................................................... 6

POINT I ...................................................................................................... 7
THE PLAINTIFFS HAVE A SUBSTANTIAL LIKELIHOOD OF SUCCESS
ON THE MERITS .......................................................................................... 7

    (1)    Enforcement of the Automatic Stay and Turnover of Property of
the Estate Pursuant to 11 U.S.C. §§ 362 and 542. ........................................ 9

    (2)    Avoidance and Recovery of Post Petition Transfers Pursuant to 11
U.S.C. §§ 549, 550, and 551 from Initial and Subsequent
Transferee Defendants. ........................................................................ 10

    (3)    Breach of Fiduciary Duty of Loyalty ........................................................ 12

    (4)    Conversion ......................................................................................... 14

    (5)    Unjust Enrichment .............................................................................. 15

    (6)    Tortious Interference with Business Opportunities ................................... 16

    (7)    Unfair Competition ............................................................................. 17

POINT II ...................................................................................................... 20
THE BALANCE OF THE HARMS BETWEEN PLAINTIFFS AND
DEFENDANTS FAVORS ISSUING THE PRELIMINARY INJUNCTION ................. 20

POINT III ..................................................................................................... 21
THE PUBLIC INTEREST FAVORS ISSUING THE INJUNCTION ......................... 21

CONCLUSION .................................................................................................. 23

i

## TABLE OF AUTHORITIES

**Page**

<span style="font-variant: small-caps;">CASES</span>

*Advanced Enterprises Recycling, Inc. v. Bercaw,*
  376 N.J. Super. 153 (App. Div. 2005) ................................................................15

*Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.,*
  42 F.3d 1421 (3d Cir. 1994).............................................................................21

*AngioDynamics, Inc. v. Biolitec AG,*
  711 F.3d 248 (1st Cir. 2013)..............................................................................3

*Apollo Technologies Corp. v. Centrosphere Indus. Corp.,*
  805 F. Supp. 1157 (D.N.J. 1992) ......................................................................18

*Auxton Computer Enters., Inc. v. Parker,*
  174 N.J. Super. 418 (App. Div. 1980) ..........................................................12, 14

*AYR Composition, Inc. v. Rosenberg,*
  261 N.J. Super. 495 (App. Div. 1993) ...............................................................11

*C.R. Bard, Inc. v. Wordtronics Corp.,*
  235 N.J. Super. 168 (Law Div. 1989) ................................................................19

*Cameco, Inc. v. Gedicke,*
  157 N.J. 504 (1999) ...............................................................................12, 13, 14

*Carlo C. Gelardi Corp. v. Miller Brewing Co.,*
  421 F. Supp. 233 (D.N.J. 1976) ........................................................................20

*Chernow v. Reyes,*
  239 N.J. Super. 201 (App. Div.), certif. denied, 122 N.J. 184 (1990).....................12

*Columbia Broad Sys., Inc. v. Melody Recordings, Inc.,*
  134 N.J. Super. 368 (App. Div. 1975) ................................................................19

*DiMaria Constr., Inc. v. Interarch,*
  351 N.J. Super. 558........................................................................................16

*Duffy v. Charles Schwab & Co. Inc.,*
  123 F. Supp.2d 802 (D.N.J. 2000) ....................................................................18

*In Abalene Exterminating Co., Inc. v. Oser,*
  125 N.J. Eg. 329 (Ch. Div. 1939) .....................................................................11

*In re G-I Holdings, Inc.*,
    327 B.R. 730 (Bankr. D.N.J. 2005) ..................................................................6, 7

*In re St. Clair*,
    251- B.R. 660 (D.N.J. 2000), affd sub nom., 281 F.3d 224 (3d Cir. 2001)...............9

*Ingersoll-Rand Co. v. Ciavatta*,
    110 N.J. 609 (1988), aff'd, 216 N.J. Super. 667 (App. Div. 1987), rev'd. 210 N.J.
    Super. 339 (Ch. Div. 1986)................................................................8, 12, 19

*Jenkins v. Region Nine Hous. Corp.*,
    306 N.J. Super. 258 (App. Div. 1997), certif. denied, 153 N.J. 405 (1998)............16

*Kershner v. Mazurkiewicz*,
    670 F.2d 440 (3d Cir. 1982)...................................................................7

*Lamorte Bums & Co. v. Walters*,
    167 N.J. 285 (2001) .................................................................11, 13, 16, 17

*MacDougal v. Weichert*,
    144 N.J. 380 (1996) .............................................................................16

*Marsellis-Wamer Corp. v. Rabens*,
    51 F. Supp. 2d 508,525 (D.N.J. 1999) ...................................................14

*MNI Mgmt., Inc. v. Wine King, LLC*,
    542 F. Supp. 2d 389 (D.N.J. 2008) ....................................................7, 20

*Mueller v. Technical Devices Corp.*,
    8 N.J. 201 (1951) ...............................................................................14

*N.J. Optometric Ass'n v. Hillman-Kohan*,
    144 N.J. Super. 411 (Ch. Div. 1976), aff'd, 160 N.J. Super. 81 (App. Div. 1978).................18

*National Football League Properties Inc., v. New Jersey Giants, Inc.*,
    637 F. Supp. 507 (D.N.J. 1986) .......................................................19

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*,
    290 F.3d 578 (3d Cir. 2002)..................................................6, 7, 20, 21

*Obum v. Shapp*,
    521 F.2d 142 (3d Cir.1975)....................................................................7

*Patel v. Soriano*,
    369 N.J. Super. 192 (App. Div.), certif. denied, 182 N.J. 141 (2004) .................16, 17

*Platinum Mgmt. Inc. v. Dahms*,
    285 N.J. Super. 274 (Law Div. 1995) ....................................................13

2201314.6 8/29/2013

*Printing Mart-Morristown v. Sharp Electronics Corp.,*
    116 N.J. 739 (1989) ...................................................................................16

*Q-Tips, Inc. v. Johnson & Johnson,*
    206 F.2d 144 (3d Cir. 1953), cert. denied, 346 U.S. 867 (1953) ..............18

*Russell-Stanley v. Plant Industries,*
    250 N.J. Super. 478 (Ch. Div. 1991) .......................................................15

*Semmes Motors, Inc. v. Ford Motor Co.,*
    429 F.2d 1197 (2d Cir. 1970)...................................................................20

*Squeezeit Corp. v. Plastic Dispensers,*
    31 N.J. Super. 217 (App. Div. 1954) ........................................................18

*Sun Dial Corp. v. Rideout,*
    16 N.J. 252 (1954) ....................................................................................8

*Troll Co. ApS v. Russ Berrie & Co.,*
    290 F.3d 548 (3d Cir. 2002)......................................................................7

*United Board & Carton Corp. V. Britting,*
    63 N.J. Super. 517 (Ch. Div. 1959), aff'd, 61 N.J. Super. 340 (App. Div. 1960), certif.
    denied, 33 N.J. 326 (1960)....................................................8, 12, 13, 14

*Vibra-Tech Engineers, Inc. v. Kavalek,*
    849 F.Supp.2d 462,489 (D.N.J. 2012) ...............................12, 13, 14

*VRG Corp. v. GNK Realty Corp.,*
    135 N.J. 539 (1994) .........................................................................15, 16

*Whitmyer Bros., Inc. v. Doyle,*
    58 N.J. 25 (1971) ....................................................................................13

**STATUTES**

11 U.S.C. § 551................................................................................................11

11 U.S.C. §§ 362 and 542 ...........................................................................9, 10

11 U.S.C. § 362(a)(3) ........................................................................................9

11 U.S.C. § 541(a)(I) .........................................................................................9

11 U.S.C. § 542 ............................................................................................9, 10

11 U.S.C. § 542(a) ..........................................................................................10

11 U.S.C. §§ 549, 550, and 551 ......................................................................10

2201314.6 8/29/2013

11 U.S.C. § 550(a) ..................................................................................................................11

11 U.S.C. § 549(a) ..................................................................................................................10

**OTHER AUTHORITIES**

Federal Rule of Bankruptcy Procedure 7065 ...................................................................6

## PRELIMINARY STATEMENT

After their vehement objections to the sale and settlement proposed in the above-captioned chapter 11 case were overruled by this Court, Defendants (as defined below) took matters into their own hands and disregarded this Court's orders.  After the orders approving the sale and settlement were entered, the Defendants implemented a plan to contact the Debtor's customers and divert the business from the Debtor to an entity created by Defendants on August 5, 2013, one day prior to the August 6, 2013 held before this Court to consider the sale and settlement.

This brief is submitted in support of the application of Plaintiffs Melanie L. Cyganowski, as Chapter 11 Trustee (the "Trustee") for the Estate of Biolitec, Inc. (the "Debtor"), and AngioDynamics, Inc. ("ADI") (the Trustee and ADI are collectively the "Plaintiffs") for a temporary restraining order and a preliminary injunction against Defendants Biolitec U.S., Inc. ("New Biolitec"), Biolitec AG ("BAG"), Biolitec Medical Devices, Inc. ("BMD"), Biomed Technology Holdings Ltd. ("Biomed"), Ceramoptec Industries, Inc. ("Ceramoptec"), Biolitec Holding US, Inc. ("Holding"), Biolitec FZ LLC ("BFZ"), Wolfgang Neuberger ("Neuberger"), Jack Furcht ("Furcht"), Scott Cote ("Cote"), Cemal Sagnak ("Sagnak"), Damian Plange ("Plange"), John Doe and Jane Doe (collectively, the "Defendants") enjoining and restraining Defendants from the improper use of the Debtor's proprietary information including use of the Debtor's customer lists, and also to direct the Defendants to refrain from their unfair competition and tortuous interference with Plaintiffs' rights and business opportunities.  Without such equitable relief, and because Plaintiffs cannot estimate with any degree of certainty the nature and extent of their actual and potential damages incurred (and to be incurred) as a direct

consequence of the actions of the Defendants through New Biolitec and the misappropriation of the Debtor's proprietary information, the damages and injuries sustained by Plaintiffs, as well as those threatened by reason of Defendants' actions, are irreparable and Plaintiffs have no adequate remedy at law to protect themselves from the wrongful activities of Defendants.

On August 9, 2013, this Court entered an Order Authorizing the Trustee's Entry Into the Asset Purchase Agreement (the "APA"), Docket No. 259 (August 9, 2013) (the "Sale Order"). The Sale Order approved the Debtor's sale to ADI of Debtor's business as a going concern. The Trustee sold the Debtor's assets to ADI, on August 26, 2013, including good will, customer lists and other proprietary information.

Upon entry of the Sale Order, the Defendants effectively ceased supplying necessary products to the Trustee because they demanded that the Debtor pay retail prices for the products as opposed to the prior discounted terms used by the parties. This change of terms did not allow the Trustee to continue the Debtor's business and keep the Debtor's cash and accounts receivable at expected levels to ensure a more substantial distribution for unsecured creditors. The Defendants' actions in this regard caused significant harm to the Debtor's estate prior to the closing of the sale.

Furthermore, on July 18, 2013, Defendant BFZ, who had no prior involvement, also filed a Motion to Intervene in the Second Circuit Appeal[1] to prevent the Trustee from withdrawing the appeal with prejudice upon the entry of the order approving the Settlement Agreement (the "Settlement Order"). This action was designed to delay, or even prevent, the sale and damage the Debtor's business, and it was designed to stall so Defendants would have additional time to contact customers.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Complaint.

2

The Sale Order and the Settlement Order, Docket No. 261 (entered on August 9, 2013),

were not appealed and the time to file an appeal has expired.  Instead, the Defendants, after

having been overruled in their extensive objections to the Settlement Agreement and APA, then

simply started contacting the Debtor's customers to try to obtain their business in direct violation

of the automatic stay and in violation of the terms of the Settlement Agreement and APA.  The

Defendants' ongoing actions continue the pattern of brazen willful violations of court orders and

the law.  The Defendants recently sent a letter to the Debtor's customers, only a few days after

the entry of the Sale Order which stated that the Trustee had liquidated the Debtor's assets and

did not sell the Debtor's assets.  These are gross misstatements of the truth.

Notably, this is not the first request made by ADI to enjoin the looting of the Debtor's

assets.  As this Court is aware, pursuant to a Preliminary Injunction (the "District Court

Injunction") entered by the United States District Court for the District of Massachusetts (the

"MA District Court") on September 13, 2012, the Debtor and other defendants have been

prevented from transferring the Debtor's assets.  The Debtor's parent, Biolitec AG, was also

prohibited from merging with a newly-formed Austrian subsidiary, which it did in March 2013,

in violation of the District Court Injunction.  For this, the MA District Court found BAG in

violation of the District Court Injunction, calling BAG's action "the most flagrantly offensive

violation of a court order that this court has personally encountered."  MA Action, docket no.

247 at 14.

The District Court Injunction was affirmed by the United States Court of Appeals for the

First Circuit at *AngioDynamics, Inc. v. Biolitec AG*, 711 F.3d 248 (1st Cir. 2013).  The District

Court Injunction has been in place throughout the pendency of this chapter 11 case, and any

actions to remove assets from the Debtor, such as alleged in the Complaint, by the Defendants (a

3

majority of whom were also defendants subject to the District Court Injunction), are also violations of the District Court Injunction.

Now the Defendants brazenly admit that they have just formed[2] New Biolitec for the purpose of continuing the Debtor's business for their own benefit and have distributed a document titled "Fact Sheet Regarding Biolitec Inc. Chapter 11 Bankruptcy" (the "Customer Solicitation") which states "… although the Trustee controls Biolitec, Inc., she decided to liquidate Biolitec, Inc., which is no longer in business. As set forth above, however, the Biolitec Group medical products that were formerly distributed by Biolitec, Inc., are now being distributed by Biolitec U.S. Inc.". The Customer Solicitation is attached as Exhibit C to the Declaration of Stephen Trowbridge.

In addition, the Defendants represented to the Second Circuit Court of Appeals in pleadings filed after the approval of the Sale Order that "[b]ecause Biolitec, Inc. was merely a distributor of the Biolitec Group's medical products in the United States, the sale [of the Debtor's assets to ADI] will not permit ADI to take over or operate Biolitec, Inc.'s business." Biolitec FZ's Opposition to Emergency Motion to Dismiss Appeal with Prejudice and Cancel Oral Argument, 2d Cir. Docket No. 12-4364 Document No. 159-1, p. 7 (August 19, 2013). Neuberger further represented that "after the bankruptcy court approved the proposed settlement and sale, the Trustee's actions made it impossible for the Biolitec Group to continue distributing its medical products in the U.S. through Biolitec, Inc. … The Biolitec Group continues to sell its products in the United States, however, and we informed the Trustee that if she wished to continue purchasing product from the Biolitec Group, she was free to do so at our retail prices."

---

[2] According to filings with the Delaware Division of Corporations, Biolitec U.S. Inc. was formed as a Delaware Corporation on August 5, 2013, one day prior to the hearing to approve the Settlement Agreement and APA.

2201314.6 8/29/2013

Declaration of Wolfgang Neuberger, 2d Cir. Docket No. 12-4364 Document No. 166, p. 3-4 (August 21, 2013).

The Customer Solicitation and the representations to the Second Circuit are undisputed evidence that the Defendants usurped the business assets of the Debtor which were transferred to ADI pursuant to the APA and Sale Order on August 26, 2013. New Biolitec, improperly created as the successor of the Debtor, has interfered with the sale of the Debtor's business to ADI to the detriment of both the Debtor's Estate and ADI. Despite the pendency of this bankruptcy case and the appointment of the Trustee, and the Sale and Settlement Agreement Defendants have simply created a new corporation to take over the Debtor's business without paying any consideration for the business and without the approval of this Court. These brazen acts must be halted.

The Defendants including employees Furcht and Cote and Chief Executive Officer Neuberger, owe fiduciary duties to the Debtor and the Trustee, and have acted in violation of their duties of loyalty and good faith by permitting Debtor's business and assets to be usurped by New Biolitec, ultimately benefiting the Defendants, without any compensation to the Estate. Although the Trustee has demanded that Defendants cease and desist from continuing their unfair competition, and the illegal interference with Debtor's business, the Defendants continue to act as though the Debtor was still simply a part of the "Biolitec Group," and not a business operating in chapter 11 under the control of a chapter 11 trustee.

As a consequence, the Defendants are irreparably harming both the Estate and ADI, the purchaser of substantially all of the Debtor's assets, including but not limited to the Debtor's contracts, goodwill, intellectual property, permits, documents and information including customer lists, historical customer files, and marketing materials, pursuant to the Sale Order.

ADI is now in jeopardy of losing the benefit of its bargain with respect to the Debtor's assets as a result of Defendants' unlawful competition, improper solicitation of Debtor's customers, and misappropriation of Debtor's proprietary information.  Unless enjoined from doing so, Defendants will continue to knowingly, dishonestly and intentionally engage in conduct which damages ADI's future operation of the business..

## STATEMENT OF FACTS

Plaintiffs respectfully refer the Court to the allegations set forth in the Adversary Complaint for Temporary, Preliminary and Permanent Injunctive Relief, Turnover of Estate Property, Costs, Sanctions and Other Relief (the "Complaint") and the Affidavit of Stephen A. Trowbridge submitted herewith, for the facts supporting their claims and this request for injunctive relief.

## LEGAL ARGUMENT

Pursuant to Federal Rule of Civil Procedure ("FRCP") 65, made applicable in adversary proceedings pursuant to Bankruptcy Rule 7065, the court may issue a preliminary injunction with notice to the adverse party.  Although an injunction is considered an extraordinary remedy and should be granted only in limited circumstances, "[t]he grant or denial of a preliminary injunction rests within the sound discretion of the court." *In re G-I Holdings, Inc.*, 327 B.R. 730, 750 (Bankr. D.N.J. 2005). *See also Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 586 (3d Cir. 2002).  The moving party has the burden of convincing the court that the following factors favor granting preliminary relief: "(1) the likelihood that the moving party will succeed on the merits; (2) the extent to which the moving party will suffer irreparable harm without injunctive relief; (3) the extent to which the

nonmoving party will suffer irreparable harm if the injunction is issued; and (4) the public interest." *Novartis Consumer Health, Inc.*, 290 F.3d at 586. *See also Dam Things From Denmark, a/k/a Troll Co. ApS v. Russ Berrie & Co.*, 290 F.3d 548, 556 (3d Cir. 2002); *G-I Holdings, Inc.*, 327 B.R. at 750. "The second and third factors of the four-prong test require the court to balance the respective hardships between the moving and the nonmoving parties." *G-I Holdings, Inc.*, 327 B.R. at 750. *See also Novartis Consumer Health, Inc.*, 290 F.3d at 596. As set forth herein, Plaintiffs satisfy all of the requirements for the issuance of preliminary restraints against the Defendants. In particular, Plaintiffs will suffer irreparable harm if the value of the assets of the Debtor is stripped and Plaintiffs are most likely to succeed on the merits in preventing the further looting of the Debtor's assets. Accordingly, Plaintiffs request that the Court issue a temporary restraining order and a preliminary injunction.

## POINT I

### THE PLAINTIFFS HAVE A SUBSTANTIAL
### LIKELIHOOD OF SUCCESS ON THE MERITS

The party seeking a preliminary injunction must demonstrate a likelihood of success on the merits, which has been described as a "reasonable probability of eventual success in the litigation." *MNI Mgmt., Inc. v. Wine King, LLC*, 542 F. Supp. 2d 389, 403 (D.N.J. 2008) (quoting *Kershner v. Mazurkiewicz*, 670 F.2d 440, 443 (3d Cir. 1982)). "In evaluating whether a movant has satisfied this first part of the preliminary injunction standard, '[i]t is not necessary that the moving party's right to a final decision after trial be wholly without doubt; rather, the burden is on the party seeking relief to make a prima facie case showing a reasonable probability that it will prevail on the merits.'" *Id.* (quoting *Obum v. Shapp*, 521 F.2d 142, 148 (3d Cir.1975)).

7

As detailed in the Complaint, and confirmed by the Defendants' filings in the Second Circuit, including Neuberger's sworn declaration, and the Customer Solicitation distributed by Defendants to customers of the Debtor, immediately after the Court overruled the Defendants extensive objections to the Sale and Settlement Agreements, Defendants improperly contacted the Debtors and sought to divert the Debtor's business to New Biolitec. Defendants used the Debtor's proprietary customer information to divert business from the Debtor and disrupt the transfer of the Debtor's assets pursuant to the Sale Order to ADI. Now, after the transfer of the business to ADI, the Defendants' actions are negatively impacting the value of the assets purchased from the Trustee.

In New Jersey, an injunction is proper to protect a company's relationship with its customers because customer relationships, including but not limited to customer lists, are protectable. *Ingersoll-Rand Co. v. Ciavatta*, 110 N.J. 609 (1988), aff'd, 216 N.J. Super. 667 (App. Div. 1987), rev'd. 210 N.J. Super. 339 (Ch. Div. 1986). Indeed, customers' relationships do not have to be with exclusive customers of the employer to be protectable. *United Board & Carton Corp. V. Britting*, 63 N.J. Super. 517 (Ch. Div. 1959), aff'd, 61 N.J. Super. 340 (App. Div. 1960), certif. denied, 33 N.J. 326 (1960). An injunction is likewise proper to prevent the further misappropriation of confidential business information. This principle applies not only in the context of trade secrets and information the employer has specified to be confidential, but also to information that the employee knows, or should know, that his or her employer would not wish to have disclosed. *Sun Dial Corp. v. Rideout*, 16 N.J. 252 (1954). Because Plaintiffs will be able to establish each of the claims set forth in the Complaint, temporary restraints and preliminary injunctive relief should be issued.

8

**(1) Enforcement of the Automatic Stay and Turnover of Property of the Estate Pursuant to 11 U.S.C. §§ 362 and 542.**

Defendants improperly diverted the Debtor's proprietary information post-petition and the Defendants used, and are using, that information in violation of the automatic stay, in particular through the newly-created entity, defendant New Biolitec.

Because all of the information relating to the Debtor's customers is property of the Debtor's estate, it cannot be used by the Defendants and must be turned over to the Trustee pursuant to 11 U.S.C. § 542 for exclusive use by the purchaser of such information, ADI. Section 362(a) provides that the filing of a petition operates as a stay, applicable to all entities, of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Thus, subsection 362(a)(3) stays any act to: (1) obtain possession of, or exercise control over, "property of the estate" (that is, property of the debtor as of the date of the filing of the petition), or (2) obtain possession of "property from the estate" (property over which the estate has control or possession). *In re St. Clair*, 251- B.R. 660, 664 (D.N.J. 2000), affd sub nom., 281 F.3d 224 (3d Cir. 2001). Under section 541(a)(1), the estate is comprised of, among other things, "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(I). ADI executed the APA understanding that the Defendants could not use any proprietary information including customer lists in violation of the automatic stay and in violation of the fiduciary duties owed by the Defendants to the Debtor.

The customer information which is now being used by the Defendants to continue the Debtor's business in the name of New Biolitec, was property of the Debtor's estate, controlled by the Trustee and was sold to ADI on August 26, 2013, pursuant to the APA and the Sale Order. The Defendants once again have simply ignored the orders of this Court, declined to appeal them

9

and have proceeded to take matters into their own hands, secretly wresting control of the

Debtor's business from the Trustee after they unsuccessfully objected to the approval of the sale

of the Debtor's business to ADI.  Accordingly, the Defendants have violated the automatic stay.

In addition, the Defendants are required to turn over all copies of information relating to

the Debtor's customers to the Trustee pursuant to section 542.  That statute provides:

> Except as provided in subsection (c) or (d) of this section, an
> entity, other than a custodian, in possession, custody, or control,
> during the case, of property that the trustee may use, sell, or lease
> under section 363 of this title, or that the debtor may exempt under
> section 522 of this title, shall deliver to the trustee, and account for,
> such property or the value of such property, unless such property is
> of inconsequential value or benefit to the estate.

11 U.S.C. § 542(a).  Thus, there is a high likelihood that the Trustee will succeed on her claim to

recover this property from the Defendants under sections 362 and 542 of the Bankruptcy Code.

### (2) Avoidance and Recovery of Post Petition Transfers Pursuant to 11 U.S.C. §§ 549, 550, and 551 from Initial and Subsequent Transferee Defendants.

The Trustee will also be able to avoid the unauthorized transfer of the Debtor's

proprietary information to the Defendants, including the subsequent transfer of such information

to defendant New Biolitec pursuant to 11 USC §§ 549, 550, and 551.  Pursuant to section 549(a)

of the Bankruptcy Code, "the trustee may avoid a transfer of property of the estate ... that occurs

after the commencement of the case and ... that is not authorized under this title or by the court."

11 U.S.C. § 549(a).  Section 550 provides that to the extent a transfer is avoided under section

549:

> The trustee may recover, for the benefit of the estate, the property
> transferred, or, if the court so orders, the value of such property,
> from:
>
> 1. the initial transferee of such transfer or the entity for whose
> benefit such transfer was made; or

10

2. any immediate or mediate transferee of such initial transferee.
11 U.S.C. § 550(a).

Finally section 551 provides that any transfer avoided under section 549 "is preserved for the benefit of the estate but only with respect to property of the estate." 11 U.S.C. § 551. As set forth above, the customer information improperly taken by former Debtor employees Defendants Furcht and Cote prior to their resignation and transferred to New Biolitec is property of the Debtor's estate and transferred on August 26 to ADI.

Further, the assets in question were purchased by ADI pursuant to the APA approved by this Court's Sale Order, which provides for the transfer of the Debtor's assets, including, but not limited to, the Debtor's contracts, goodwill, intellectual property, permits, documents and information including customer lists, historical customer files, and marketing materials.

Defendants Neuberger, Furcht and Cote's post-petition misappropriation of these assets, immediately after authorization of the Sale Order and Settlement Order, were not authorized under the Bankruptcy Code or by this Court. Accordingly, the Trustee may avoid the transfer. Further, under section 550, the Trustee may recover the value of the property so transferred from the Defendants. Thus, the Trustee will likely succeed on the merits of this claim.

The above violations also amount to a breach of the common-law duty of confidentiality/non-disclosure. *In Abalene Exterminating Co., Inc. v. Oser*, 125 N.J. Eg. 329 (Ch. Div. 1939), the court found a breach of the common-law duty of nondisclosure of confidential information when customer information obtained in the course of employment was subsequently used to compete with a former employer. *See also Lamorte Bums & Co. v. Walters*, 167 N.J. 285 (2001) (citing *AYR Composition, Inc. v. Rosenberg*, 261 N.J. Super. 495, 504 (App. Div. 1993) (customer lists have been afforded trade secret protection and noting that information need not rise to the level of a trade secret to be protected). New Jersey courts

11

recognize "legitimate interests in protecting information that is not a trade secret or proprietary information, but highly specialized, current information not generally known in the industry, created and stimulated by the research environment ..." *Ingersoll Rand*, supra, 110 N.J. at 638.

Based on the above, it is undisputed that Defendants are using and have disclosed to New Biolitec the Debtor's proprietary information. It is evident, through the Defendants' representations to the Second Circuit and the misrepresentations contained in the New Biolitec Customer Solicitation, that the Defendants have been using and are likely to continue to use the Debtor's proprietary information to compete unfairly with the Debtor's business purchased by ADI. Further demonstrating the egregious nature of the Defendants' actionable conduct, it is undisputed that they have refused to return the Debtor's customer information, refused to correct the misstatements to the Debtor's customers, or stop competing with the Debtor's business transferred to ADI. Accordingly, temporary and preliminary restraints must be issued to prevent additional use of these materials by the Defendants.

### (3) Breach of Fiduciary Duty of Loyalty

In New Jersey, "an employee owes his employer a fiduciary duty of loyalty." *Vibra-Tech Engineers, Inc. v. Kavalek*, 849 F.Supp.2d 462,489 (D.N.J. 2012). Loyalty from an employee to an employer consists of certain very basic and common sense obligations. An employee must not, while employed, act contrary to the employer's interest. *Chernow v. Reyes*, 239 N.J. Super. 201, 204 (App. Div.), certif. denied, 122 N.J. 184 (1990) (citing *Auxton Computer Enters., Inc. v. Parker*, 174 N.J. Super. 418, 425 (App. Div. 1980); *Vibra-Tech Engineers*, 849 F.Supp.2d at 489. In particular, during the period of employment, an employee has a duty not to compete with his or her employer. *Cameco, Inc. v. Gedicke*, 157 N.J. 504, 517- 18 (1999); *Subcarrier Communications, Inc.*, 299 N.J. Super. at 644-45; *United Bd. & Carton Corp.*, 63 N.J. Super. at

12

524. This obligation by the employee to protect the employer's interests " 'lasts until the last hour of .... service.'" *United Bd. & Carton Corp.*, 63 N.J. Super. at 526 (quotation omitted). More importantly, "an employee may breach the duty of loyalty by actions that do not rise to the level of direct competition." *Vibra-Tech Engineers*, 849 F.Supp.2d at 489.

The New Jersey Supreme Court has made clear that an "employee may not breach the undivided duty of loyalty he or she owes to his or her employer while still employed by soliciting the employer's customers or engaging in other acts of secret competition." *Lamorte Burns & Co. v. Walters*, 167 N.J. 285, 303 (2001) (*citing Platinum Mgmt. Inc. v. Dahms*, 285 N.J. Super. 274, 303 (Law Div. 1995) (emphasis added). This common law duty of loyalty prohibits an employee, while still employed, from engaging conduct that causes the employer "to lose customers, sales, or potential sales." *Cameco*, 157 N.J. 504, 522 (1999). For example, assisting an employer's competitor can amount to a breach of the duty to loyalty. *Id.* at 516. An employer has a patently legitimate interest in protecting his trade secrets as well as his confidential business information and he has an equally legitimate interest in protecting his customer relationships. *Whitmyer Bros., Inc. v. Doyle*, 58 N.J. 25, 33 (1971). An employee's duty of loyalty to his or her employer goes even beyond refraining from privately soliciting the employer's customers while still employed; in the most general sense, the duty of loyalty prohibits the employee from taking affirmative steps to injure the employer's business. *Lamorte*, 167 N.J. at 305. It is a duty embedded in the common law, and exists regardless of the existence of an anti-competition contractual provision. *Id.* at 303.

In evaluating an employee's conduct under the breach of the duty of loyalty standard, important factors to consider in the analysis include: the employee's level of trust and confidence, the existence of an anti-competition contractual provision, and the egregiousness of

13

the conduct. *Cameco*, 157 N.J. at 516-18, 521. The analysis is fact-sensitive, and is not susceptible to "mechanical applications of abstract principles of law." *Id.* at 516. Courts have recognized the damage a former disloyal employee is able to inflict on his employer, even in the absence of a covenant, where he has launched or assisted a competing business while he is employed. *See United Bd. and Carton Corp.*, 63 N.J. Super. at 527. Additionally, there is an absolute bar to the solicitation of an employer's customers for one's own benefit, or other similar acts in competition with the employer's business, before the individual has terminated his employment. "Such conduct undoubtedly constitutes a breach of the undivided loyalty which the employee owes to his employer while he is still employed." *Auxton*, 174 N.J. Super. at 423-24.

Here, Defendants Neuberger, Furcht and Cote violated the duties of loyalty and good faith they owed to the Debtor during their employment, both before and after the appointment of the Trustee, by creating a new company to succeed to the Debtor's business, by compiling information relating to the Debtor's customer lists, customer information and marketing materials, and by simply continuing to usurp the Debtor's business in the name of New Biolitec.

**(4) Conversion**

By refusing to turn over the Debtor's property, which was purchased by ADI, the Defendants have converted the Plaintiffs' property. Under New Jersey common law, conversion is defined as "the exercise of any act of dominion in denial of another's title to ... chattels, or inconsistent with such title." *Marsellis-Warner Corp. v. Rabens*, 51 F. Supp. 2d 508,525 (D.N.J. 1999) (quoting *Mueller v. Technical Devices Corp.*, 8 N.J. 201, 207 (1951). "The tort of conversion is the wrongful exercise of dominion and control over property owned by another in a manner inconsistent with the owner's rights." *Vibra-Tech Engineers*, 849 F.Supp.2d at 493

14

(quoting *Advanced Enterprises Recycling, Inc. v. Bercaw*, 376 N.J. Super. 153, 161 (App. Div. 2005)).

It is clear that the Defendants have used the Debtor's customer information to create and distribute the Customer Solicitation. Defendants, in violation of the automatic stay and ADI's ownership rights, have refused to return the customer information and any profits obtained therefrom to the Plaintiffs. Because it is indisputable that none of the Defendants have any right to the requested information or profits, Plaintiffs will be able to establish their claim of conversion.

### (5) Unjust Enrichment

The gravamen of Count Five of Plaintiffs' complaint is that Defendants obtained a benefit to which they are not entitled and which it would be inequitable for them to keep. "To establish unjust enrichment, a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust." *VRG Corp. v. GNK Realty Corp.*, 135 N.J. 539, 554 (1994); *see also Russell-Stanley v. Plant Industries*, 250 N.J. Super. 478, 510 (Ch. Div. 1991) (stating that "a finding of unjust enrichment involves a two part test: plaintiff must show both that defendant received a benefit, and that the retention of that benefit without payment would be unjust").

Here, it is apparent that the Defendants have received and are continuing to receive a substantial benefit at the expense of Debtor and ADI by using the Debtor's, and now ADI's, proprietary information to solicit clients and provide services to the Debtor's customers. The undisputed acts of Neuberger, Furcht and Cote, while still employed by the Debtor and after their employment ended, in violation of the well-established common law of New Jersey are sufficient to establish a likelihood of success on Plaintiffs' cause of action for unjust enrichment as there is

15

no doubt that Defendants are unjustly benefiting from the acts and omissions by Neuberger,

Furcht and Cote to benefit New Biolitec. *VRG Com.*, 135 N.J. at 554.

### (6) Tortious Interference with Business Opportunities

An action for tortious interference with business opportunities "protects the right to

pursue one's business, calling, or occupation, free from undue influence or molestation."

*Lamorte*, 167 N.J. at 305 (citing *Printing Mart-Morristown v. Sharp Electronics Corp.*, 116 N.J.

739, 750 (1989)). To prove a cause of action for tortious interference with business

opportunities, plaintiff must prove: (a) a reasonable expectation of advantage from a prospective

contractual or economic relationship; (b) defendant maliciously interfered with this advantage

intentionally and without justification or excuse; and, (c) the interference caused the loss of the

expected advantage, and that the injury caused damage. *Printing Mart-Morristown*, 116 N.J. at

751-52; *Patel v. Soriano*, 369 N.J. Super. 192, 242 (App. Div.), certif. denied, 182 N.J. 141

(2004).

Although the protected interest is not required to rise to the level of an enforceable

contract, *see Jenkins v. Region Nine Hous. Corp.*, 306 N.J. Super. 258, 265 (App. Div. 1997),

certif. denied, 153 N.J. 405 (1998), plaintiff is required to demonstrate, absent the interference,

there was a reasonable probability that it would have received the anticipated economic benefits.

*Lamorte Burns & Co.*, 167 N.J. at 306; *MacDougal v. Weichert*, 144 N.J. 380, 404 (1996); *Patel*,

369 N.J. Super. 192, 242. As noted above, malice is construed to mean that the interference was

inflicted intentionally and without justification or excuse, not necessarily as "ill will." *DiMaria*

*Constr., Inc. v. Interarch*, 351 N.J. Super. 558, 567 (App. Div. 2001, *aff'd*, 172 N.J. 182 (2002).

It is insufficient for a defendant to refute a claim for tortuous interference with

prospective economic advantage based solely on the argument that plaintiff failed to prove that

16

any particular customer was solicited or that its lost business revenues were due to the unlawful conduct of defendants. *See Lamorte Burns & Co.*, 167 N.J. at 306. All that is required is proof that, had there been no interference with plaintiff's prospective economic advantage, there was a reasonable probability that [plaintiff] would have received the anticipated economic benefit. *Id. See also Patel*, 369 N.J. Super. at 242-43.

Defendants have already used the Debtor's confidential business information to solicit and/or continue working with clients who were previously clients of the Debtor. Specifically, the Debtor, and subsequently ADI through the purchase of the Debtor's assets, had a reasonable expectation of advantage stemming from the Debtor's relationship with its clients. ADI also had a reasonable expectation of continuing the relationship with the Debtor's customers after it purchased the Debtor's assets and, in fact, paid valuable consideration for it. The filings made by the Defendants in the Second Circuit show an intentional pattern of continuing the Debtor's business through a newly incorporated non-debtor affiliate. Had Defendants not wrongfully taken the Debtor's proprietary information and established a similar business through New Biolitec, the purchased assets would have been more profitable for ADI. Given Defendants' purposeful interference with Debtor's expectation of economic advantage, which has been done without any justification, the Debtor's estate and ADI have been damaged.

As a result, there is a strong likelihood that the Plaintiffs will succeed on the merits of this cause of action.

### (7) Unfair Competition

Plaintiffs are likely to succeed on the merits of their claim of unfair competition as the events set forth at length in the Complaint evidence that Defendants presently are utilizing

17

confidential information belonging to the Debtor and to ADI to directly and unfairly compete with ADI.

The purpose of New Jersey's law on unfair competition is to promote higher ethical standards in the business world, and to prevent the very type of conduct in which Defendants are engaged. *See N.J. Optometric Ass'n v. Hillman-Kohan*, 144 N.J. Super. 411, 427 (Ch. Div. 1976), aff'd, 160 N.J. Super. 81 (App. Div. 1978) (internal citation omitted). The trend in this area of the law "has been in the direction of enforcing increasingly higher standards of fairness or commercial morality in trade." *Q-Tips, Inc. v. Johnson & Johnson*, 206 F.2d 144, 145 (3d Cir. 1953) (quotation omitted), cert. denied, 346 U.S. 867 (1953). Essentially, unfair competition is a business tort that typically consists of the misappropriation of one's property by another which has some sort of commercial or pecuniary value. *Duffy v. Charles Schwab & Co. Inc.*, 123 F. Supp.2d 802, 815 (D.N.J. 2000). The concept is deemed to be "as flexible and elastic as the evolving standards of commercial morality demand." *N.J. Optometric Ass'n*, 144 N.J. Super. at 427 (internal citation omitted). As articulated in *Ryan v. Carmona Bolen Home for Funerals*, "the judicial goal should be to discourage, or prohibit the use of misleading or deceptive practices which renders competition unfair" and "[t]he law must be sufficiently flexible to accommodate those goals." 341 N.J. Super. 87, 92 (App. Div. 2001). Specifically, where there has been imitation or reproduction of a product obtained by fraud or breach of confidential relation, the copying will be enjoined. *See Squeezeit Corp. v. Plastic Dispensers*, 31 N.J. Super. 217, 222 (App. Div. 1954); *see also Apollo Technologies Corp. v. Centrosphere Indus. Corp.*, 805 F. Supp. 1157, 1204 (D.N.J. 1992) (noting that "[i]n appropriate circumstances, information on pricing, discounts and other relevant customer data may enable one to take unfair advantage of another" and therefore constitute protectable interests"); *see*

18

*Ingersoll Rand Co. v. Ciavatta*, 110 N.J. 609 (1988), aff'g, 216 N.J. Super. 667 (App. Div. 1987),

rev'g, 210 N.J. Super. 339 (Ch. Div. 1986) (recognizing that in addition to protecting

information that constitutes trade secrets, New Jersey courts recognize "legitimate interests in

protecting information that is not a trade secret or proprietary information, but highly

specialized, current information not generally known in the industry .... "). Thus, notions of

unfair play, bad faith, and malicious conduct are considered in the context of an unfair

competition cause of action. *See Columbia Broad Sys., Inc. v. Melody Recordings, Inc.*, 134 N.J.

Super. 368 (App. Div. 1975) (stating that prima facie case of unfair competition requires

evidence of bad faith or malicious conduct); *National Football League Properties Inc., v. New

Jersey Giants, Inc.*, 637 F. Supp. 507, 518 (D.N.J. 1986) (noting that the essence of unfair

competition is unfair play). Accordingly, competition which violates established business ethics

and customs is unlawful. *C.R. Bard, Inc. v. Wordtronics Corp.*, 235 N.J. Super. 168, 174-175

(Law Div. 1989).

ADI is currently faced with unfair competition from the Defendants resulting from

violation of common law duties by the Defendants, including specifically Neuberger, Furcht and

Cote, and their disclosures of the Debtor's confidential business information and the continued

use of such information by New Biolitec. Defendants are engaged in unfair competition by

utilizing and disclosing Plaintiffs' confidential business information obtained from Debtor in an

effort to gain an unfair advantage in providing services to the Debtor's customers in violation of

common law and statutory principles of unfair competition.

The chronology of events detailed in the Complaint establishes that Plaintiffs are likely to

prevail on their unfair competition claim. The conduct that has occurred here, and which will

2201314.6 8/29/2013

continue absent judicial intervention, is exactly the type of conduct New Jersey's common law

and statutory unfair competition laws are designed to prevent and remedy.

## POINT II

### THE BALANCE OF THE HARMS BETWEEN PLAINTIFFS AND DEFENDANTS FAVORS ISSUING THE PRELIMINARY INJUNCTION

As set forth above, in determining whether to grant preliminary injunctive relief, the

court must also consider the extent to which the moving party will suffer irreparable harm

without injunctive relief and the extent to which the nonmoving party will suffer irreparable

harm if the injunction is issued. *Novartis Consumer Health, Inc.*, 290 F.3d at 586. Thus, the

court must analyze "the potential injury to the plaintiff if an injunction does not issue versus the

potential injury to the defendant if the injunction is issued." *Id.* at 596. "Grounds for irreparable

injury include loss of control of reputation, loss of trade, and loss of good will." *MNI Mgmt.,*

*Inc. v. Wine King, LLC*, 542 F. Supp. 2d 389, 403 (D.N.J. 2008). In addition, the loss of the

business as a whole constitutes irreparable damage for which preliminary injunctive relief is

appropriate. *See Carlo C. Gelardi Corp. v. Miller Brewing Co.*, 421 F. Supp. 233, 236 (D.N.J.

1976) (citing *Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1205 (2d Cir. 1970))

("[T]he loss of business and good will, and the threatened loss of the enterprise itself, constitute

irreparable injury to the plaintiff sufficient to justify the issuance of a preliminary injunction.").

Here, Plaintiffs will suffer irreparable harm if the Court does not issue injunctive relief.

The Defendants already misappropriated the Debtor's proprietary information and are presently

using it to contact the Debtor's customers through New Biolitec. New Biolitec is attempting to

service clients who were previously clients of the Debtor. If the Defendants are permitted to

continue to engage in unfair competition, ADI will be prevented from realizing the full benefit of

20

its bargain with the Debtor and from implementing its purchase of the Debtor's operations as a going concern, including the intangible assets such as customer relationships and goodwill that accompany such a purchase. This type of loss cannot be compensated with money damages.

On the other hand, New Biolitec, created on August 5, 2013, one day prior to the sale hearing, had no business or clients and obtained certain clients only by violating court orders, bankruptcy law and state law. Consequently, if an injunction is issued, New Biolitec loses nothing to which it is entitled. Moreover, the Defendants have refused to cease using the Debtor's proprietary information, which is an asset of the estate that was sold to ADI. Permitting Defendants to continue competing with Plaintiffs would be a dangerous precedent and would essentially reward Defendants for their blatant violations of this Court's orders and the Bankruptcy Code. The Defendants have ignored the decisions of the Trustee and have disregarded this Court's Sale Order. Defendants should not be permitted to profit from their own wrongdoing. Because Plaintiffs will suffer substantially greater harm than Defendants, the balance of the harms favors issuing the temporary restraints and preliminary injunction.

## POINT III

### THE PUBLIC INTEREST FAVORS ISSUING THE INJUNCTION

Finally, the Court must also consider the public interest in determining whether to grant Plaintiffs' request for preliminary injunctive relief. *Novartis Consumer Health, Inc.*, 290 F.3d at 586. However, "[a]s a practical matter, if a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff." *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 n.8 (3d Cir. 1994).

Unfortunately, the recent actions of the Defendants are a continuation of the activities of the Defendants which have been severely criticized by the Massachusetts District Court when it found that ADI has demonstrated a likelihood of success on the merits that the Defendants have transferred approximately $18 million of cash and property from the Debtor to make sure that ADI would not be able to recover on its $23 million Judgment. Moreover, notwithstanding the issuance of the District Court Injunction, certain of the Defendants blatantly violated it by transferring assets of the Debtor to affiliates and by BAG merging into an Austrian subsidiary. As the District Court has noted, the violations of the Injunction by some of the Defendants are an affront to the rule of law.

The Defendants' action of incorporating New Biolitec on the day before the sale hearing, having New Biolitec's name substituted for the Debtor's name on the Debtor's website, and using proprietary information of the Debtor to solicit customers from the Debtor and ADI is a continuation of the activities of the Defendants to harm the Debtor's estate and ADI. If court orders, bankruptcy law, and business law can be violated with impunity, the rule of law is turned on its head. It is respectfully submitted that the Defendants' actions be stopped as quickly as possible.

Here, the public interest favors issuing the preliminary injunction because in the absence of the requested restraints, Defendants will be permitted to benefit from their wrongdoing at the expense of the Debtor's estate and ADI. The filing of a bankruptcy petition (which, in this case resulted in the appointment of a trustee) should not be a way for a parent corporation to leave liabilities behind while continuing the debtor's business outside of the bankruptcy process. This Court's Orders appointing the Trustee and approving the APA and Settlement Agreement with ADI will also have been rendered ineffective. Further, Defendants' misappropriation of estate

22

assets is contrary to the main goal in bankruptcy, which is to maximize the value of a debtor's estate for the benefit of creditors. Thus, the public interest favors the issuance of the temporary restraints and preliminary injunction.

## CONCLUSION

Based on the foregoing, Plaintiffs respectfully request the Court to impose temporary restraints and grant the requested preliminary injunctive relief.

Dated: August 29, 2013
Red Bank, New Jersey

**McDONNELL CROWLEY, LLC**

By: _____
Brian T. Crowley, Esq. (BC 2778)
*Counsel for Melanie L. Cyganowski Chapter 11 Trustee*
115 Maple Avenue
Red Bank, New Jersey 07701
(732) 383-7233


and

**OTTERBOURG, STEINDLER, HOUSTON
& ROSEN, P.C.**
*Counsel for Melanie L. Cyganowski Chapter 11 Trustee*
230 Park Avenue
New York, New York 10169-0075
(212) 661-9100
David M. Posner, Esq., of counsel (*pro hoc vice*)

23

Dated: August 29, 2013
Whippany, New Jersey

**WEBBER McGILL, LLC**

By: _Douglas J. McGill_

Douglas J. McGill, Esq. (DM 0436)
*Counsel for AngioDynamics, Inc.*
760 Route 10, Suite 104
Whippany, New Jersey 07981
(973) 739-9559

and

**BOND SCHOENECK & KING, PLLC**
One Lincoln Center
Syracuse, New York 13202
(315) 218-8000
Joseph Zagraniczny, Esq. (*pro hoc vice*)
Stephen A. Donato, Esq. (*pro hoc vice*)
*Counsel for AngioDynamics, Inc.*

2201314.6 8/29/2013