

**Joseph J. DiPasquale**
Director
Direct: 973-323-8666
jdipasquale@trenklawfirm.com

347 Mt. Pleasant Avenue, Suite 300
West Orange, New Jersey 07052

P: 973-243-8600
F: 973-243-8677

Client No. 4270-001

September 4, 2013

**Via ECF and Email (chambers_of_dhs@njb.uscourts.gov)**

Honorable Donald H. Steckroth, U.S.B.J.
United States Bankruptcy Court
M.L. King Federal Building
50 Walnut Street, 3rd Floor
Newark, NJ 07102

      **Re:**    **Biolitec, Inc.**
              **Chapter 11 – Case No. 13-11157 (DHS)**

              **Cyganowski v. Biolitec US, Inc., et al.**
              **Adv. Pro. No. 13-1883 (DHS)**

Dear Judge Steckroth:

      Pursuant to paragraph D on page 5 of yesterday's Order to Show Cause, Biolitec U.S., Inc. and the other Defendants named in the above referenced adversary proceeding now move to dissolve or modify the temporary restraints contained in the Order to Show Cause on two business days' notice to plaintiffs, Trustee Melanie Cyganowski and AngioDynamics, Inc. ("ADI"). The Non-Debtor Affiliates respectfully request that the Court schedule a hearing for this Friday, September 6, 2013.

      Expedited treatment of the motion is necessary because, as set forth in more detail in the accompanying supporting declaration of Defendant Cemal Sagnak, Defendant Biolitec AG and its worldwide affiliates (the "Biolitec Group") are being irreparably harmed by the temporary restraints and will continue to suffer such harm until the temporary restraints are dissolved.

Because of the urgency of this matter, and the fact that Defendants have had only one day to prepare this motion, we ask that the Court accept this letter brief in lieu of a more formal brief. Similarly, we refer the Court to the accompanying Sagnak declaration for a complete description of the relevant facts in lieu of a separate statement of facts in this letter brief. Mr. Cernak has been responsible for the Biolitec Group's worldwide sales since 2007, is a director of Biolitec U.S., Inc. and he has personal knowledge of the relevant facts. He will attend the hearing on this matter and is prepared to answer under oath all questions put to him by the Trustee, ADI or the Court.

In addition, as in many applications for injunctive relief, the facts are more critical than the legal issues. The parties do not dispute the familiar four-factor standard for injunctive relief. Nor do Defendants dispute that injunctive relief would be appropriate if Defendants were withholding assets transferred to ADI under the Asset Purchase Agreement or interfering with any of the contracts with the Debtor's former customers that ADI acquired pursuant to the Asset Purchase Agreement. Whereas the adversary complaint and plaintiffs' motion for injunctive relief assert that Defendants are engaging in such conduct, they do not identify any specific assets that are being withheld and they do not point to any particular contracts that are being interfered with. In fact, as demonstrated in the Sagnak declaration, those assertions lack merit and they are affirmatively disproved by the undisputed evidence: the terms of the Asset Purchase Agreement and the Court's August 9, 2013 order approving the Asset Purchase Agreement (the "Sale Approval Order") as well as the other uncontested documentary evidence described and annexed to the Sagnak Declaration.

## THE TEMPORARY RESTRAINTS MUST BE DISSOLVED

### A. The Temporary Restraints Are Invalid on Their Face.

ADI and the Trustee obviously drafted the temporary restraints in haste and they are clearly invalid on their face. Incredibly, they provide that

> *any party with notice of knowledge of the Order to Show Cause* is temporarily enjoined and restrained from:
>
> A. Soliciting, canvassing or accepting any business for . . . any person, firm, corporation or business similar to or in competition with any business of the Debtor;
>
> B. Soliciting any of Debtor's former customers or accepting any business or transciton with Debtor's former customers;
>
> C. Contacting or communicating in any way with any of the Debtor's former customers or attempting in any way to induce any of the Debtor's former customers to curtail or cancel its business with AngioDynamics; . . .

      E. Continuing to provide services to any former customer of the Debtor.

OSC at p. 4 (emphasis added).

Defendants are providing notice of the Order to Show Cause to the other companies that compete for business from the Debtor's former customers. Pursuant to the plain meaning of the Order to Show Cause, none of those companies may attempt to compete with ADI for business from the Debtor's former customers. Such a restrain is clearly an invalid restraint of trade that violates antitrust laws and regulations.

In addition, the temporary restraints deprive the Debtor's former customers of their right to choose their supplier of medical lasers and fibers. The restraints cause even more severe irreparable harm to one category of the Debtor's customers. As set forth in more detail in the Sagnak declaration, the Debtor sold primarily to two categories of customers:

    (i) Consumers of medical lasers and fibers used to treat urology conditions (the "Urology Customers"); and

    (ii) Consumers of medical lasers and fibers used to treat vein disease (the "Vein Customers").

Sagnal Dec. at ¶¶ 3-5.

ADI does not manufacture or distribute medical lasers and fibers that can be used by the Debtor's former Urology Customers. *Id*. ADI only competes with the Biolitec Group in the market segment for lasers and fibers that can be used to treat vein disease. *Id*. Accordingly, the temporary restraints prevent the Debtor's former Urology Customers from purchasing products from anyone!

Although the Trustee and ADI will undoubtedly assert that their intention was to restrain only the Non-Debtor Affiliates from contacting and selling product to the Debtor's former customers, that is not what the temporary restraints provide and, as set forth in more detail below, there is no legitimate basis to distinguish between the Non-Debtor Affiliates and any other competitor of ADI.

  **B.** **The Non-Debtor Affiliates Are Not Withholding Any Assets Acquired by ADI Under the Asset Purchase Agreement.**

Although the Trustee and ADI do not expressly identify any assets that they assert the Non-Debtor Affiliates are withholding, the implication is that they are improperly interfering with the Debtor's contracts with its former customers and they are interfering with ADI's use of the Debtor's purported "customer lists." The reason why the Trustee and ADI do not expressly identify these assets is because the undisputed facts establish that their assertions lack merit.

### 1. ADI Did Not Acquire Any Contractual Rights to Sell to the Debtor's Former Contracts.

Although ADI acquired certain contracts between the Debtor and some of its former Vein Customers, those contracts require ADI to supply the customer with Biolitec Group medical lasers and fiber optics. Neither the Trustee, the Debtor nor ADI have access to, or the right to acquire, such products. Sagnak Dec. at ¶¶ 6-8, 15-17. Accordingly, ADI cannot comply with the terms of the contracts, which do not permit ADI to substitute its products for Biolitec Group products. Indeed, ADI assumed the contracts even though they knew that they could not comply with the terms of the contracts and sell Biolitec products. *Id*. at ¶ 16. In effect, ADI falsely represented to this Court that it could provide adequate assurance of future performance under Bankruptcy Code section 365.

A fundamental fallacy underlying the temporary restraints is the assertion that the Debtor's former customers are engaged in any business with ADI. Knowing that it could not perform the customer contracts acquired under the Asset Purchase Agreement, ADI has been falsely telling the Debtor's former customers that they have no choice but to amend their contracts to allow ADI to substitute its own products for Biolitec Group companies. Sagnak Dec. at ¶¶ 18-33.

### 2. ADI Did Not Acquire Exclusive Customer Lists.

ADI did not purchase an operating business and the Trustee is no longer operating the Debtor's business. Although ADI purchased the Debtor's "customer list," it is undisputed that the Debtor did not maintain a customer list other than the names of its customers on its accounts receivable information and lists of customers that were using the Debtor's lasers. Sagnak Dec. at ¶ 11. ADI purchased no more than the right to contact the Debtor's former customers and try to convince them to start purchasing ADI's competing products. The Non-Debtor Affiliates have not attempted to stop ADI from doing so (although they vigorously object to ADI's false, deceptive and misleading statements to the Debtor's customers).

ADI's use of the Debtor's so called "customer list," however, does not prevent the Non-Debtor Affiliates from contacting their own customers or from responding to inquiries from anyone, including inquiries from the Debtor's former customers. *Id*. at ¶¶ 9-14 (describing the Non-Debtor Affiliates' Customer Resource Management System (the "CRM System"), which maintains the Non-Debtor Affiliates' lists of worldwide customers and prospective customers, which are independent from, and unrelated, to the any customer lists maintained by the Debtor).[1] *Cf. Network Communs. of Indiana, Inc. v. IDT Corp.*, 2004 WL 3315374 at \*\*2-3, U.S. Dist. LEXIS 27710 (S.D. Ind. Sept. 30, 2004) (holding that where business partners shared mutual customers, bankruptcy sale of one of the party's lists entitled purchaser to non-exclusive use of customer list). *See also Dystar Corp. v. Canto*, 1 F. Supp. 2d 48, 56 (D. Mass. 1997) (holding

---

[1] Defendants have requested permission to file their proprietary customer lists, which was derived independently from the Debtor, under seal. See Sagnak Dec. at ¶ 12.

that sales made by new firm formed by principal of dye distributing firm to distributing firm's former customers did not violate preliminary injunction order prohibiting principal and original firm from disposing of or transferring their assets other than in normal course of business, where no showing was made that distributing firm had proprietary customer list, but only that new firm and distributing firm had a number of the same customers, and that principal solicited them to do business with new firm).

Also, customer information is not proprietary or confidential when it is available to the public. *See, e.g., Subcarrier Communs., Inc. v. Day*, 299 N.J. Super. 634, 642-43 (App. Div. 1997) (holding that former employer was not entitled to preliminary injunction prohibiting former employee, her newly formed company, and her current employer from dealing with specific customers, even though employer alleged that former employee took former employer's confidential list, as information on list was available to the public).

Here, the Trustee made the customer information at issue available to the public in July when she filed her "Executory Contract Assumption and Cure Notice" in connection with her motion for approval of the sale of the Debtor's assets. Bankruptcy Case Docket No. 198. In fact, the names of customers appeared at the beginning of the case, when the Debtor filed its Schedules. The Debtor previously disclosed its customers publicly in its Amended Schedule B. Bankruptcy Case Docket No. 83. Thus, for this additional reason, the temporary restraints are improper.

### C. The Temporary Restraints Constitute an Illegal Restraint of Trade.

The temporary restraints prevent any of ADI's competitors from contacting or selling to the Debtor's former customers. There is no legitimate basis to prevent any of ADI's competitors, including the Biolitec Group, from competing with ADI. On the contrary, ADI has made false and deceptive representations to the Debtor's former customers that violate state and federal consumer protection statutes. Sagnak Dec. at ¶¶ 18-33. ADI is the party that should be restrained from making false and deceptive representations to consumers of medical lasers and fibers, including the Debtor's former customers.

Because the Debtor did not have, and ADI did not acquire, exclusive rights to sell to the Debtor's former customers under the Asset Purchase Agreement, there is no basis to distinguish between the Biolitec U.S., Inc. (the Biolitec Group's "New U.S. Distributor") and any other competitor of ADI. The temporary restraints improperly insulate ADI from competition for business from the Debtor's former customers from any party.

Moreover, the Non-Debtor Affiliates did not oppose the Trustee's motion to approve the Asset Purchase Agreement on anti-trust grounds because it was apparent that the Non-Debtor Affiliates could still compete for the Debtor's customers based on the terms of the Asset Purchase Agreement and the proposed Sale Approval Order. The temporary restraints have now given ADI what it could not legitimately obtain through the purchase of the Debtor's assets: a ban on all competition for the Debtor's former customer that violates anti-trust laws and consumer protection laws.

### D. Paragraphs D and F of the Temporary Restraints are Not Objectionable Provided that Their Scope is Clarified.

Paragraphs D and F of the temporary restraints enjoin any party receiving notice of the Order to Show cause from:

> D. Filing or maintain any pleading, action or proceeding impairing, or seeking to impair, AngioDynamic's possession or use or the value of the assets purchased from the Debtor; and
>
> F. Possessing, accessing or using any proprietary, confidential or other protectable information formerly owned by the Debtor, including, but not limited to, any lists of former customers of the Debtor.

OSC at p. 4, ¶¶ D and F.

Immediately before plaintiffs filed the adversary complaint, the Non-Debtor Affiliates were preparing to file lawsuits against ADI seeking damages and injunctive relief for its false and deceptive representations to consumers of medical lasers and fibers. See, e.g., Exhibits 7 and 8 to the Sagnak declaration (emails demanding that ADI stop such practices and mitigate the damages arising from its conduct by informing the Debtor's former customers that ADI's representations that Biolitec Group products are no longer available in the United States and that the Debtor's former customers have no choice but to amend their contracts to allow substitution of ADI's products were false. See Exhibits 7 and 9 to Sagnak Dec.

In addition, the Non-Debtor Affiliates intend to inform state Attorney Generals and the Federal Trade Commission of ADI's conduct, which violates state unfair competition statutes as well as section 5 of the FTC Act.

Pending clarification from the Court, the Non-Debtor Affiliates have delayed taking these actions. In fact, however, these actions do not violate paragraph D of the temporary restraints because they do not impair, or seek to impair, ADI's "possession or use or the value of the assets purchased by ADI." On the contrary, such actions merely seek relief from ADI's illegal conduct, which is unrelated to the assets ADI purchased pursuant to the Asset Purchase Agreement.

Accordingly, Defendants have no objection to paragraph D of the temporary restraints, provided that the Court clarifies that it does not prevent the Non-Debtor Affiliates from seeking relief for ADI's false, deceptive, unfair and anti-competitive conduct.

Similarly, Defendants have no objection to paragraph F of the temporary restraints, provided that the Court clarifies that the Non-Debtor Affiliates communication and business transactions with its own customers do not constitute "possessing, accessing or using any proprietary, confidential or other protectable information formerly owned by the Debtor."

### E. The Temporary Restraints are Causing Irreparable Harm to the Debtor's Former Customers and Defendants.

The temporary restraints are causing irreparable harm to both the Debtor's former customers and to Defendants. Sagnak Dec. at ¶¶ 45-50. The customers are not obligated to purchase ADI's products and they want to purchase the Biolitec Group's products despite ADI's unfair and deceptive sales tactics. The temporary restraints prevent them from exercising their free choice to choose between competing products. Because they need a steady supply of product, they will be forced into purchasing products from ADI or another competitor that they do not want unless the temporary restraints are lifted immediately. *Id*.at ¶ 47.

Similarly, Defendants and the other Non-Debtor Affiliates will be irreparably harmed by the loss of their customers, which will be forced to turn to ADI or other competitors, unless the temporary restraints are lifted immediately. *Id*.; see also Exhibits 12 and 13 to Sagnak Dec. (September 4, 2013 customer inquiries to the New U.S. Distributor's sales representative inquiring about the Order to Show Cause and ADI's high pressure sales tactics).

Moreover, the interruption in the supply of Biolitec Group fibers, even if temporary, will appear to confirm ADI's false statement that the Biolitec Group products are no longer legally available in the US. Even if the temporary restraints are lifted when the Court considers ADI's request for a preliminary injunction, the Non-Debtor Affiliates will be irreparably injured because many of the customers will question whether they can rely on a steady supply of Biolitec Group fibers. Because a steady supply of fibers is critical to the customers and to their patients, customers who are forced now to switch to ADI's products may not return to Biolitec products when the temporary restraints are lifted. These customers and the Non-Debtor Affiliates will be irreparably harmed unless the temporary restraints are lifted immediately.

### F. The Temporary Restraints Should be Modified to Permit Defendants to Notify their Customers of this Motion and to Permit their Counsel to Obtain Supporting Declarations from the Customers.

ADI has circulated the Order to Show Cause with the temporary restraints to all of the Debtor's customers and is falsely asserting that the temporary restrains confirm ADI's prior false and deceptive representations. *See* Exhibits 12 and 13 (including emails from ADI to the customers describing the Order to Show Cause).

The customers have naturally contacted their Biolitec Group sales representatives, but the temporary restraining order prevents them from making any response. Accordingly, the Court should immediately modify the temporary restraints in order to permit the Defendants to inform their customers of this motion.

Similarly, many of the Debtor's former Vein and Urology Customers would enthusiastically support the Non-Debtor Affiliates' motion to dissolve or modify the temporary restraints. Sagnak Dec. at ¶ 50. The temporary restraints prevent Defendants' counsel from contacting the customers to request supporting declarations. Accordingly, the Court should immediately modify the temporary restraints to permit the Defendants to contact the customers

for this exclusive purpose. The proposed order scheduling a hearing on this motion for Friday, September 6, 2013, includes this relief.

## CONCLUSION

The temporary restraints should be dissolved in their entirety.

Respectfully submitted,

TRENK, DiPASQUALE,
DELLA FERA & SODONO, P.C.

/s/ Joseph J. DiPasquale

Joseph J. DiPasquale


THE GRIFFITH FIRM

/s/ Edward Griffith

Edward Griffith


cc: Donald F. MacMaster, Esq.  (Via email Donald.f.macmaster@usdoj.gov)
    David Posner, Esq.          (Via email dposner@oshr.com)
    Brian Crowley, Esq.         (Via email bcrowley@mcdonnellcrowley.com)
    Stephen Donato, Esq.        (Via email Sdonato@bsk.com)
    Douglas J. McGill, Esq.     (Via email Dmcgill@webbermcgill.com)
    Edward Griffith, Esq.       (Via email Eg@thegriffithfirm.com)